IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Jordan M. Tonkin, | ) | C/A No. 3:12-198-JFA-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Shadow Management, Inc., *d/b/a Platinum Plus*, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Jordan M. Tonkin ("Tonkin"), filed this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) ("PDA"), alleging pregnancy discrimination and retaliation against her former employer, Shadow Management, Inc. ("Shadow Management"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 37.) Tonkin filed a response in opposition (ECF No. 39) and the defendant replied (ECF No. 40). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted in part and denied in part.

## BACKGROUND

The following facts are undisputed unless otherwise indicated and, where disputed, are taken in the light most favorable to Tonkin. Tonkin worked for the defendant, which operates a strip club known as "Platinum Plus," as a waitress/beer tub attendant for over two years. During that time, Tonkin was pregnant three times. She aborted the first two pregnancies in the first trimester.

Toward the end of the first trimester of the pregnancy at issue in this dispute, on September 16, 2010, Kent Bowlin, a manager at Platinum Plus, made a remark to Tonkin that he did not want a "fat girl" working at the front of the club and that he did not know how much longer Tonkin could work there. On September 25, 2010, Tonkin's boyfriend, who had arrived to pick Tonkin up after her shift, was involved in a scene with a Platinum Plus customer in the club parking lot. The incident involved yelling and profanity; club bouncers had to restrain Tonkin's boyfriend to prevent him from fighting with the customer.

According to Tonkin, the next day she telephoned Platinum Plus's General Manager, Jason Downing, to inquire about when she would be scheduled to take maternity leave. Downing allegedly told her that her maternity leave would begin immediately and that she could come back to work after the baby was born. She denies that he mentioned the parking lot incident or that she was being fired.

Downing's version of events differs from Tonkin's. According to Downing, Tonkin directed profanity at the Platinum Plus bouncers and managers during the incident in the parking lot on September 25, 2010, and later that day he terminated her employment, indicating on her written Notice of Employee Separation that she was terminated because she was "involved in an altercation on company property." (Downing Dep. Ex. 2, ECF No. 37-7 at 2.) Downing made this decision without consulting with anyone else at Platinum Plus. According to Downing, he called Tonkin soon after the incident on September 25 and informed her she was fired because of the parking lot incident. In Downing's version, the only mention of Tonkin's pregnancy was when she alluded to it when pleading for her job.

On December 16, 2010, Tonkin's attorney hand delivered a letter to Platinum Plus seeking to resolve the matter and threatening litigation. On December 19, 2010, Tonkin received a letter dated November 27, 2010[1] from Platinum Plus's payroll service indicating that her employment had been terminated. By letter dated January 21, 2010, Platinum Plus's attorney responded to Tonkin's attorney and informed him that she had been terminated for fighting. On March 24, 2011, Tonkin filed an administrative charge with the South Carolina Human Affairs Commission. After receiving a right-to-sue letter, Tonkin commenced this action asserting pregnancy discrimination based on the allegation that she was involuntarily forced to take maternity leave before it was medically necessary. During the discovery phase of the instant litigation, Downing testified in his deposition that he would have considered rehiring Tonkin if she had not filed the instant lawsuit. Tonkin obtained leave of court to amend her Complaint to add a claim for retaliation.

## DISCUSSION

### A.      Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

---

[1] The letter was apparently mailed to Tonkin's mother's residence, the address Tonkin had provided to Platinum Plus, and Tonkin did not apparently actually receive it until December 19.



summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." <u>Ballinger v. N.C. Agric. Extension Serv.</u>, 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  <u>Id.</u> at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor.  <u>Dennis v. Columbia Colleton Med. Ctr., Inc.</u>, 290 F.3d 639, 645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party.  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000).  The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms.  <u>See id.</u> at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.    Proof in Employment Cases**

A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof.  First, she may establish through direct or circumstantial proof that a protected characteristic such as gender was a motivating factor in the employer's adverse decision.  <u>See Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 284-85 (4th Cir. 2004) (*en banc*).  Such proof includes "evidence of conduct or statements that both reflect directly the alleged discriminatory

PJG

attitude and that bear directly on the contested employment decision." Id. (quoting Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995)). "[A] plaintiff must demonstrate that a 'protected trait . . . actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.' " Worden v. SunTrust Banks, Inc., 549 F.3d 334, 342 n.7 (4th Cir. 2008) (quoting Hill, 354 F.3d at 286).

Alternatively, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas frame work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt,

601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005).  To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence.  Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148.  However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate.  Id.  Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49.  "Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.    Tonkin's Claims**

**1.    Disparate Treatment Based on Pregnancy**

Tonkin argues that her testimony regarding her telephone conversation with Downing constitutes direct evidence of discrimination motivated by her pregnancy, precluding summary judgment.  The court agrees.  If a jury were to believe Tonkin's version of the disputed telephone

call, it could reasonably conclude that Tonkin's pregnancy was a motivating factor in Downing's decision to place her on maternity leave on September 25, 2010.  See Burwell v. E. Air Lines, Inc. 633 F.2d 361 (4th Cir. 1980).  Although Downing's version of events dramatically differs from Tonkin's, such credibility determinations are the province of a jury.

Platinum Plus argues that this dispute is not a material one because Tonkin cannot demonstrate causation.  However, Platinum Plus's argument in this regard depends on a fact finder's acceptance of Downing's version of events—specifically, that he fired Tonkin rather than placing her on involuntary maternity leave.  There is no suggestion in the record, or by any party, that Downing placed Tonkin on involuntary *maternity* leave as discipline for the incident in the parking lot.  Accepting *Tonkin*'s version of the conversation as true, as the court is required to do, Downing stated to Tonkin that she would have to begin her maternity leave immediately (at eleven weeks of pregnancy) and that she could come back when the baby was born, never mentioning the incident in the parking lot.  Were a jury to believe this, it is disingenuous to argue that a decision to place an employee on *maternity* leave was not motivated by the pregnancy.[2]  Cf. Jeffers v. Lafarge North America, Inc., 622 F. Supp. 2d 303, 315 n.7 (D.S.C. 2008) (ADEA) (stating that direct evidence includes "evidence that the employer 'announced, admitted, or otherwise indicated that [the forbidden consideration] was a determining factor' ") (quoting Cline v. Roadway Express, Inc., 689 F.2d 481, 485 (4th Cir. 1982) (ADEA)).

---

[2] Platinum Plus's motion is almost entirely devoted to the McDonnell Douglas analysis. However, because Tonkin has forecast direct evidence of discrimination, the court need not engage in that exercise.

Page 7 of  9



### 2.    Retaliation

Tonkin's claim of retaliation fails. Although she presents evidence that Downing considered her ineligible for re-hire because she filed this lawsuit, she cannot show that she suffered any adverse action because she engaged in protected activity, as she presents no evidence that she actually ever sought re-employment with Platinum Plus. See Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008) (requiring a plaintiff in a retaliation case to show that "(1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action"). Downing's speculation about what he might have done or not done in a hypothetical scenario cannot support a retaliation claim. Cf. Hyson v. Architect of Capitol, 802 F. Supp. 2d 84, 102 (D.D.C. 2011) (stating that speculation of future punishment is insufficient to establish retaliation in a Title VII case).

### RECOMMENDATION

For the foregoing reasons, the court recommends that the defendant's motion for summary judgment be granted in part and denied in part.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 10, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).