IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Jordan M. Tonkin,<br><br>    Plaintiff,<br><br>vs.<br><br>Shadow Management, Inc., d/b/a<br>Platinum Plus,<br><br>    Defendant. | C/A No. 3:12-cv-00198-JFA<br><br><br><br><br>**Order** |

      In this employment discrimination case brought under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. 2000e *et seq.*, Shadow Management, Inc., d/b/a Platinum Plus, ("Defendant") has filed a post-trial motion seeking to dismiss the retaliation claim for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure; judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure; and to alter or amend judgment under Rule 59(e) of the Federal Rules of Civil Procedure. ECF No. 105. Alternatively, Defendant moves pursuant to Rule 59(a) for a new trial on the retaliation claim. Plaintiff responded in opposition, ECF No. 109, and the court heard oral arguments on August 5, 2014. For the reasons set out below, the court grants Defendant's 12(b)(1) motion to dismiss the retaliation claim for lack of subject-matter jurisdiction.

    I.    BACKGROUND

      Defendant operates a club known as Platinum Plus in Columbia, South Carolina, and Jordan M. Tonkin ("Plaintiff") worked there as a waitress/beer tub attendant for about two years. On March 24, 2011, when no longer employed by the club, Plaintiff filed an administrative charge with the Equal Employment Opportunity Commission, through the South Carolina

Human Affairs Commission ("EEOC charge"). In the EEOC charge, Plaintiff checked the box for disability. In her statement of particulars, Plaintiff contended that,

> I was involuntarily placed on maternity leave on September 25, 2010[,] before my medical condition required it because management thought I was "too fat[.]"[] I later learned that my employment was terminated.
>
> I believe I was discriminated against because of my pregnancy in violation of the South Carolina Human Affairs Law and the Pregnancy Discrimination Act amendment to Title VII of the Civil Rights Act.

EEOC Charge, ECF No. 29–6 at 3.

After receiving a right-to-sue letter, Plaintiff filed a complaint on January 20, 2012, asserting pregnancy discrimination under Title VII based on the allegations that she was involuntarily forced to take maternity leave before it was medically necessary and eventually terminated. According to the complaint, Defendant had placed Plaintiff on maternity leave on September 25, 2010, and had told her she was not to return until after the birth of the baby, whose estimated due date was March 14, 2011. The complaint also alleged that, by letter dated January 21, 2011, Defendant's attorney told Plaintiff's attorney that Plaintiff's employment with Defendant was terminated. Pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(e), (g), DSC, the case was referred to a magistrate judge for pre-trial proceedings and a Report and Recommendation ("Report").

On January 15, 2013, Plaintiff filed a motion to amend the complaint, seeking to add a claim for retaliation under Title VII. ECF No. 27. In the motion, Plaintiff argued that three critical facts had been learned in discovery that caused her to believe she also was a victim of retaliation. First, on December 19, 2010, three days after her attorney had advised Defendant of

2

Plaintiff's Title VII concerns,[1] Plaintiff received a letter from Defendant's payroll service company dated November 27, 2010, which terminated Plaintiff's account because of payroll inactivity. This, Plaintiff argued, raised the inference that the letter had been back dated and sent in response to the letter from Plaintiff's counsel. Second, the dates on the incident reports prepared by three different witnesses to an alleged parking lot incident, which Defendant contend caused Plaintiff's termination, were different from the date of actual incident. This too, Plaintiff argued, suggested the possibility that the reports were back dated to support a termination in retaliation for the letter from Plaintiff's counsel. Third, Defendant's general manager, Jason Downing, testified in his deposition that he would have considered rehiring Plaintiff had she not filed the instant lawsuit. In its opposition to the motion to amend, Defendant argued that Plaintiff's proposed amendment would be futile because she had failed to present any viable retaliation claims. ECF No. 29. As part of that argument, without explicitly asserting lack of subject-matter jurisdiction, Defendant also contended that Plaintiff had failed to administratively exhaust her claim for retaliation deriving from any protected activity related to her attorney's letter to Defendant. At a hearing on March 7, 2013, the magistrate judge granted Plaintiff's motion to amend the complaint, which was filed on March 18, 2013. ECF No. 33.

The amended complaint asserted claims of pregnancy discrimination and retaliation under Title VII. With respect to her retaliation claim, Plaintiff alleged that, after receiving the letter from Plaintiff's counsel, "Defendant became upset with Plaintiff for asserting her Title VII rights." Am. Compl. ¶ 18, March 18, 2013, ECF No. 33. Again the complaint alleged that Defendant's attorney told Plaintiff's attorney, by letter dated January 21, 2011, that Plaintiff's employment with Defendant was terminated.

---

[1] On December 16, 2010, Plaintiff's attorney had hand-delivered a letter to Defendant seeking to resolve the matter and threatening litigation.

Before the magistrate judge, Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF No. 37. Defendant argued that Plaintiff had failed to present any evidence to establish that Defendant discriminated against her because of her pregnancy, and that Plaintiff's retaliation claim was procedurally barred because she had failed to exhaust her administrative remedies. Plaintiff responded in opposition. ECF No. 39.

On January 10, 2014, the magistrate judge issued a Report to this court wherein she recommended that this court deny Defendant's motion for summary judgment as to the pregnancy discrimination claim and grant Defendant's motion as to the retaliation claim. ECF No. 45. The Report suggested that a genuine dispute over a material fact precluded summary judgment on the discrimination claim. Furthermore, the Report opined that Plaintiff's retaliation claim failed as a matter of law because she had presented no evidence that she actually ever sought re-employment with Defendant; thus, the Report found that Plaintiff had not shown that she suffered any adverse action as a result of protected activity. The Report did not address whether Plaintiff had exhausted her administrative remedies on the retaliation claim. Plaintiff filed an objection, arguing that the Report incorrectly concluded that her retaliation claim failed as a matter of law. ECF No. 47. Specifically, Plaintiff argued that she had shown an adverse employment action because she was terminated after she had made known her Title VII claim. Also, Plaintiff submitted that she was under no obligation to seek re-employment because she had an unconditional right to return after the birth under Title VII.

Charged with making a *de novo* determination of those portions of the Report to which specific objections were made, this court found that a genuine dispute of material fact existed over when, if at all, Defendant took adverse action against Plaintiff. Therefore, in addition to the discrimination claim, this court found that summary judgment was improper for the retaliation

claim, and the case was set for trial on both claims under Title VII. The case was tried before a jury starting on June 16, 2014, excluding the issues of compensatory back pay, which the parties had agreed to have tried separately before this court. At the end of the trial, the jury returned a verdict for Defendant on the discrimination claim and for Plaintiff on the retaliation claim, awarding her $50,000 in punitive damages. Subsequently, Defendant filed thes post-trial motion currently before the court, seeking to dismiss the retaliation claim for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure; judgment as a matter of law under Rule 50; and to alter or amend judgment under Rule 59(e). ECF No. 105. Alternatively, Defendant moves pursuant to Rule 59(a) for a new trial on the retaliation claim. Because subject-matter jurisdiction presents a threshold matter, the court addresses it first.

II.     STANDARD OF REVIEW

Federal district courts are courts of limited jurisdiction. "Thus, when a district court lacks subject matter jurisdiction over an action, the action must be dismissed." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). A challenge to a court's subject-matter jurisdiction can be raised at any time, including after trial, and is properly considered on a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(h). The burden of proving subject-matter jurisdiction rests with the plaintiff, the party asserting jurisdiction. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). Unlike with a facial attack on the existence of subject-matter jurisdiction, occurring early in litigation, a court at this stage may consider evidence outside the pleadings and may resolve factual disputes regarding jurisdiction. *Id.* In other words, with a factual attack on the existence of subject-matter jurisdiction, this court is free to "satisfy itself as to the existence of its power to hear the case." *Id.* (internal citation and quotation marks omitted). Only when "the material

5

jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law" should the court grant the motion. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

### III.     ANALYSIS

Title VII prohibits an employer from retaliating against an employee for opposing unlawful discrimination or for participating in Title VII processes. 42 U.S.C. § 2000e–3(a). Before filing suit under Title VII, however, "a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *see also* 42 U.S.C. § 2000e–5(f)(1). Exhausting the administrative remedies is a statutory prerequisite to invoking the jurisdiction of this court. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) ("[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim."). The reasons for administrative remedies have been summarized as follows:

> In enacting Title VII, Congress created an agency under whose jurisdiction there would be an opportunity for the parties to resolve employment issues without public litigation. The intent was that, by avoiding publicity, employees might be spared embarrassment, and employers might be more willing to adjust their employment practices if they were not subjected to the glare of public accusation and recrimination. Congress . . . made it a condition precedent to the public litigation of those claims that an employee must first seek administrative relief through the EEOC. . . . The purposes underlying the administrative charge requirement include giving the charged party notice of the claim, narrowing the issues for speedier and more effective adjudication and decision, and giving the EEOC and the employer an opportunity to resolve the dispute. If the EEOC finds reasonable cause to believe that a violation has occurred it must attempt to eliminate the practice through conciliation, conference, and persuasion before commencing a lawsuit.

2 Barbara T. Lindemann & Paul Grossman, *Employment Discrimination Law* 1894 (4th ed. 2007).

The Fourth Circuit Court of Appeals has considered the Congressional goals in enacting the Title VII exhaustion requirement. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather than "a formality to be rushed through so that an individual can quickly file his subsequent lawsuit," Congress intended "the exhaustion requirement to serve the primary purposes of notice and conciliation." *Id.* By notifying an employer of the alleged discrimination through the EEOC charge, the employer may investigate and possibly resolve the alleged discriminatory actions on its own. *Id.* Additionally, "the exhaustion requirement initiates agency-monitored settlement, the primary way that claims of discrimination are resolved." *Id.* Congress intended to "use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes." *Id.* (internal citation and quotation marks omitted). For these reasons, and others, "the administrative process is an integral part of the Title VII enforcement scheme." *Id.*

In its motion, Defendant argues that this court should dismiss Plaintiff's retaliation claim under Title VII because Plaintiff failed to exhaust her administrative remedies for that allegation, thereby leaving this court without subject-matter jurisdiction. In considering the exhaustion of administrative remedies, the Fourth Circuit has held that the allegations in the EEOC charge determine the scope of a plaintiff's right to file a federal lawsuit. *Jones*, 551 F.3d at 300. To determine if a claim is encompassed in the charge so as to be maintained in a subsequent Title VII lawsuit, a court may consider "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint." *Id.* (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)). This inquiry attempts to strike a "balance between providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up

7

over technicalities on the other." *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012).

Here, it is undisputed that Plaintiff checked the box for disability in her EEOC charge and not the box for retaliation. Also, the narrative portion of Plaintiff's charge lacked any discussion related to retaliation. Thus, a claim for retaliation clearly was not "stated in the initial charge" so as to satisfy the first path to exhausting administrative remedies under *Evans*. Thus, the court turns to the second and third options.

Under the second option in *Evans*, this court recognizes that no single method exists for measuring why one plaintiff's claim is "reasonably related," while another plaintiff's claim falls short. As a result, litigants are left with examples as to what allegations fall within these parameters. Generally, the Fourth Circuit will bar a claim if the basis for the alleged harm claimed differs between the administrative charge and the complaint. *See Evans*, 80 F.3d at 963–64; *see also Chacko*, 429 F.3d at 509 (stating in dicta that a claim will "typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim [in the complaint] encompasses another type—such as discrimination in pay and benefits."). A court also properly dismisses a claim when the complaint alleges a broad pattern of misconduct, but the EEOC charge focused only on a discrete act. *Id.* In contrast, however, a plaintiff satisfies the exhaustion requirement, for example, when "both the EEOC charge and the complaint included claims of retaliation by the same actor, but involved different retaliatory conduct," *Sydnor*, 681 F.3d at 594 (citing *Smith*, 202 F.3d at 248), and when the administrative charge and formal litigation concerned "discriminat[ion] in promotions" but involved different aspects of the "promotional system." *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981). The Fourth Circuit also has carved out a specific rule for certain

8

retaliation claims, finding that a plaintiff need not exhaust her administrative remedies for retaliation that grows out of an earlier EEOC charge. *See Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992) (citations omitted). This rule recognizes that a plaintiff will be reluctant to report to the EEOC again after her employer has taken action against her for filing the first charge. *Id.; see also Jones*, 551 F.3d at 299, 305 (finding that the plaintiff exhausted the administrative remedies by filing two separate EEOC charges and the second EEOC charge alleged ongoing behavior, stating that "I am being forced to work in a hostile environment and subject to differential treatment in retaliation for filing [the earlier EEOC charge]").

Here, unlike in *Nealon* and its progeny, Plaintiff does not allege retaliation for having filed an EEOC charge. Based on the pleadings and the trial, it is clear that the discovery process led Plaintiff to believe that Defendant terminated her on January 21, 2011, for the specific protected activity of sending the letter to Defendant on December 16, 2010, asserting her Title VII rights.[2] Because the discrete protected activity and discrete adverse action occurred before Plaintiff filed her EEOC charge on March 24, 2011, the special rule carved out for some retaliation claims in *Nealon* does not apply. Furthermore, it is clear that Plaintiff's EEOC charge and judicial complaint are not sufficiently similar to fit within the factual circumstances described in the line of cases that include *Sydnor*, *Smith*, and *Chisholm*. Unlike in *Smith*, for instance, the EEOC charge here includes no claims or descriptions of retaliation by any actor. Instead, Plaintiff's EEOC charge checked the disability box and described pregnancy discrimination in her EEOC charge, without making any mention of retaliation discrimination. In her amended complaint and at trial, Plaintiff described protected activity and adverse action in her retaliation claim separately from the pregnancy discrimination claim. Therefore, Plaintiff's

---

[2] Notably, with agreement of both parties, the jury instructions stated that the jury could find retaliation only if Plaintiff's December 16, 2010, letter was the direct and only cause of Plaintiff's termination.

EEOC charge and complaint are not "reasonably related" so as to satisfy the second option established in *Evans*. Finally, while Plaintiff's pregnancy retaliation discrimination claim perhaps is similar to her pregnancy discrimination claim in its animus, the fact that Plaintiff listed disability and described pregnancy discrimination in her EEOC charge would not lead the EEOC to investigate retaliation discrimination, which is a distinct theory of liability. Therefore, retaliation claim does not fit within the last option under *Evans*.

Having determined that Plaintiff's retaliation claim neither was listed in her initial EEOC charge nor falls within any recognized exceptions to listing it in the charge, the court finds that exhausting the administrative remedies on the retaliation claim was a prerequisite to invoking the jurisdiction of this court for that claim. Because the retaliation could have been raised in the original EEOC charge, Plaintiff should have exhausted her administrative remedies before commencing this lawsuit. *See Wilson v. Dimario*, 139 F.3d 897 (4th Cir. 1998) (per curiam) (holding that the ruling in *Nealon* does not apply to an allegation of retaliation that occurred before the filing of an administrative charge); *see also Riley v. Tech. & Mgmt. Servs. Corp., Inc.*, 872 F. Supp. 1454, 1459–60 (D. Md. 1995) (finding that when an act of retaliation occurred before the filing of the EEOC charge and a plaintiff fails to allege retaliation, the retaliation claim is not administratively exhausted), *aff'd*, 79 F.3d 1141 (4th Cir. 1996); *see also McMillan v. S.C. Dep't of Corr.*, 16 F. Supp. 2d 635, 646 (D.S.C. 1997) (holding that when a charging party could have raised allegations of retaliation at the time she filed her charge, exhaustion of administrative remedies with respect to that charge is required), *aff'd*, 153 F.3d 721 (4th Cir. 1998). Here, Plaintiff did not allege retaliation at the time she filed her EEOC charge even though the protected activity and adverse action were known to her at the time she filed the charge. Were this court to allow Plaintiff to circumvent the administrative process, it would

10

nullify the requirement that the claims asserted in court essentially be those presented to the administrative body. Because this court finds that it lacks subject-matter jurisdiction over Plaintiff's retaliation claim for failure to exhaust the administrative remedies, it will not address Defendant's remaining arguments.

## II.     Conclusion

Accordingly, the court grants Defendant's motion to dismiss Plaintiff's retaliation claim pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The jury having found for Defendant on the pregnancy discrimination claim, and the court having determined that it lacks subject-matter jurisdiction on the retaliation claim, the $50,000 punitive award is set aside and the Clerk of Court shall enter judgment for Defendant.

IT IS SO ORDERED.

August 14, 2014                                              Joseph F. Anderson, Jr.
Columbia, South Carolina                                United States District Judge

11